UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEICO ADVANTAGE INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>DAVID J. WEILERT et al,<br><br>　　　　　　　　　　Defendants. | CASE NO. 3:22-cv-05997-DGE<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br>(DKT. NOS. 6, 9) |

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 6, 9.) For the reasons identified herein, the Court GRANTS Plaintiff's motion and DENIES Defendants' motion.

**I.　　BACKGROUND**

On January 6, 2022, Plaintiff GEICO and Defendants David and Amber Weilert (the "Weilerts") entered into a contract for car insurance (the "Policy"). (Dkt. No. 10-2.[1]) The

---

[1] An additional copy of the Policy containing endorsements not at issue in this litigation is also found at Dkt. No. 7-1 at 8–48.

Policy covered the period from March 1, 2022 to September 1, 2022.  (*Id*. at 1.)  The Weilerts were named insureds.  (*Id*.)  Members of the Weilerts' household, including Michael Weilert, were also insureds under the Policy.  (Dkt. Nos. 1 at 3; 19 at 3.)

The Policy covered four vehicles, with three vehicles maintaining Underinsured Motorist ("UIM") coverage.  (Dkt. No. 10-2 at 1–2.)  The Policy's Declarations Page identified the UIM coverage:

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Underinsured Motorist Each Person/Each Occurrence | $100,000/$300,000 | $88.90 | $88.90 | $84.46 | - |
| Underinsured Motorist Property Damage | $50,000 | $31.09 | $31.09 | $29.53 | - |
| Comprehensive (Excluding Collision) | $500 Ded | $50.80 | $74.31 | $32.13 | $44.87 |
| Collision | $500 Ded | $103.56 | $220.80 | $167.43 | $112.48 |
| Emergency Road Service | Full | $9.17 | - | - | $5.76 |
| Rental Reimbursement | $35 Per Day $1,050 Max | $11.98 | $11.98 | $11.98 | - |
| Six Month Premium Per Vehicle | | $538.61 | $675.87 | $529.82 | $183.41 |
| Total Six Month Premium | | | | | $1,927.71 |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

(*Id*. at 2.)

The Limits of Liability applicable to the UIM coverage at issue in this case are:

**LIMITS OF LIABILITY**
1. The limits for "each person" is the most we will pay as damages for **bodily injury**, including those for care and loss of services, to one person in one **accident**.
2. Subject to the limit for "each person," the limit for each **accident** is the most we will pay as damage for **bodily injury**, including those for care and loss of services, to two or more persons in one **accident**.
3. The limit for **property damage** is the most we will pay for damages to property in one **accident**. This limit is subject to the provision of Exclusion 7.
4. The maximum limits apply for each auto for which a premium is shown in the Policy declarations.
5. We will pay no more than these maximums regardless of the number of:
   (a) Autos or **trailers** to which this policy applies;
   (b) **Insureds**;
   (c) Claims;
   (d) Claimants or policies; or
   (e) Vehicles involved in the **accident**.
6. If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss. If this policy and any other policy providing Underinsured Motorists Coverage apply to the same **loss**, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy.

(*Id*. at 20.)

(DKT. NOS. 6, 9) - 2

Tragically, on July 19, 2022, Michael Weilert was killed riding his bicycle after being hit by a vehicle. (Dkt. No. 1 at 3.) The Weilerts seek the UIM limits under the Policy on behalf of themselves, Michael's estate, and Michael's siblings. (Dkt. No. 9 at 2–3.)

GEICO brings this suit to determine the terms of the Policy as they relate to the UIM coverage provisions. (Dkt. No. 1 at 4.) GEICO asserts the total amount it is required to pay for damages under the UIM coverage is $100,000 per person and $300,000 per accident (occurrence) because the UIM limits are not "stacked" for each insured vehicle under the terms of the Policy. (*See generally* Dkt. No. 6.) Conversely, the Weilerts assert GEICO is required to pay in total damages $300,000 per person and $900,000 per accident because three of the four vehicles insured carried UIM coverage and their individual UIM coverage should be stacked per the terms of the Policy. (*See generally* Dkt. No. 9.) Alternatively, the Weilerts assert the Policy language is ambiguous and such ambiguity requires a ruling in their favor. (Dkt. No. 9 at 8–10.)

## II.   DISCUSSION

### A.  Legal Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim the nonmoving party has the burden of proving. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The facts in this case are undisputed. Both parties seek judgment as a matter of law.

**B. Insurance Contract Interpretation**

Interpretation of an insurance contract is a question of law. *Daley v. Allstate Ins. Co.*, 958 P.2d 990 (Wash. 1998). Where the facts are undisputed, coverage depends solely on the language of the insurance policy. *Tyrrell v. Farmers Ins. Co.*, 994 P.2d 833, 836 (Wash. 2000). "In construing the language of an insurance policy, the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing." *Tyrrell*, 994 P.2d at 836 (internal citations and quotations omitted). "The entire contract must be construed together in order to give force and effect to each clause." *Feenix Parkside, LLC v. Berkley North Pacific and Continental Western Ins. Co.*, 438 P.3d 597, 601 (Wash. Ct. App. 2019).

A term is ambiguous "if the language on its face is fairly susceptible to two different but reasonable interpretations." *Daley*, 958 P.2d at 993 (internal citations and quotations omitted). Ambiguous terms are resolved in favor of the insured. *Id.* This is especially true for exclusionary clauses. *Hawn v. State Farm Mut. Auto. Ins. Co.*, 768 F. Supp. 293, 296 (E.D. Wash. 1991), aff'd, 977 F.2d 589 (9th Cir. 1992). Exclusions "should be spelled out for the policyholder in clear and unmistakable language." *Dairyland Ins. Co. v. Ward*, 517 P.2d 966, 969 (Wash. 1974). But where policy language is clear and unambiguous and not fairly

susceptible to two different reasonable interpretations, courts may not create an ambiguity. *Kitsap Cnty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998).

### C. UIM in Washington State

In Washington, automobile insurers must offer UIM coverage. Wash. Rev. Code § 48.22.030; *Mut. of Enumclaw Ins. Co. v. Grimstad-Hardy*, 857 P.2d 1064, 1067 (1993). The legislature implemented § 48.22.030 with the intention of ensuring, up to UIM policy limits, full compensation for insured individuals harmed by underinsured or uninsured individuals. *Id*. An insurance policy may limit both intra-policy and inter-policy stacking. *Id*.

> The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

Wash. Rev. Code § 48.22.030(5). However, "[l]imit of liability clauses need not track the exact wording of [Washington Revised Code §] 48.22.030(5) to be valid; it is sufficient if they express the intent of the statute and are unambiguous when read as a whole." *Grimstad-Hardy*, 857 P.2d at 1073.

### D. Analysis of Policy

The Weilerts assert, "[b]ecause Defendants paid a UIM premium on three separate autos, the maximum limits total $300,000/$900,000." (Dkt. No. 9 at 6.) As support, the Weilerts note Paragraph 4 of the UIM Limits of Liability states that "[t]he maximum limits apply for *each auto* for which a premium is shown in the Policy Declarations" and that paragraph 5 states GEICO "will pay no more than *these maximums* regardless of the number of" autos insured. (*Id*.) (emphasis added). According to the Weilerts, "'these maximums' is plural and refers to the [cumulative maximum limits] for each auto for which a premium is shown." (*Id*. at 7.) In response, GEICO argues "[t]he Weilerts ignore that insurance policies must be examined as a

(DKT. NOS. 6, 9) - 5

whole" and that the Weilerts' reliance on Paragraph 4 is a "logical fallacy." (Dkt. No. 14 at 3–4.)

      Reviewing the policy as a whole, and in particular Paragraphs 1 through 5 of the Limits of Liability together with the Declarations Page, the Court concludes GEICO offers the only reasonable interpretation. Paragraph 1 of the Limits of Liability states, "[t]he limits for 'each person' is the most we will pay . . . to one person in one accident." (Dkt. No. 10-2 at 20.) Under the Weilerts' interpretation, stacking applies to Paragraph 1, which means the "limits" in Paragraph 1 for "one person in one accident" is the stacked amount of $300,000 rather than the $100,000 figure contained on the Declarations Page. But the Court is unable to conclude that an average policyholder reading Paragraph 1 would refuse to take the figure on the Declaration Page at face value in combination with the limiting language in Paragraph 1. As argued by the Weilerts, instead of reading the $100,000 "per person" limit identified on the Declarations Page as the limit per person per accident, the average policyholder would need to unreasonably assume that the $100,000 figure is but a third of the true stacked limit of $300,000.

      Similarly, Paragraph 2 states, "[s]ubject to the limit for 'each person,' the limit for each accident is the most we will pay . . . to two or more persons in one accident." (*Id*.) Under the Weilerts' interpretation, the word "limit" in Paragraph 2 would mean a stacked amount of $900,000 for two or more persons in one accident. Likewise, Paragraph 3 states, "[t]he limit for property damage is the most we will pay for damages to property in one accident." (*Id*.) Under the Weilerts' interpretation, the word "limit" in Paragraph 3 would mean a stacked amount of $150,000 for property damages in one accident.

      Applying a fair, reasonable, and sensible construction as would be given to the Policy by an average person, the average person would not believe they were purchasing stacked UIM

coverage of $300,000 each person, $900,000 each occurrence, and $150,000 in property damage per accident when comparing the language in Paragraphs 1 through 3 with the information contained on the Declarations Page:

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Underinsured Motorist Each Person/Each Occurrence | $100,000/$300,000 | $88.90 | $88.90 | $84.46 | - |
| Underinsured Motorist Property Damage | $50,000 | $31.09 | $31.09 | $29.53 | - |

This is because the contrast between $100,000/$300,000/$50,000 shown on the Declarations Page and the stacked amounts of $300,000/$900,000/$150,000 as argued by the Weilerts is too great. The average purchaser would not believe they had purchased stacked coverage that provided coverage that was three times the figures identified in the Declarations Page.[2] An average person reading Paragraphs 1 through 3 would not conclude their UIM coverage per accident was anything other than what is shown on the Declarations Page.

Thus, although the Weilerts note that "these maximums" in Paragraph 5 refer to the "maximum limits" in Paragraph 4, the "maximum limits" in Paragraph 4 refers to the limits identified in Paragraphs 1 through 3. As already identified above, an average purchaser reading Paragraphs 1 through 3 would understand their UIM coverage to be the $100,000/$300,000/$50,000 shown on the Declarations Page and not the stacked amounts the Weilerts assert.

Therefore, the only logical conclusion is that "these maximums" in Paragraph 5 are the limits ($100,000/$300,000/$50,000) stated in Paragraphs 1 through 3, which are per accident. And while such "maximums" apply to "each auto for which a premium is shown in the Policy Declarations," it does not follow that the limits are stacked merely because a premium is shown

---

[2] It is noted here that neither party filed any declaration indicating the limits of the coverage they believed they were buying or selling at the time the Policy was issued.

(DKT. NOS. 6, 9) - 7

for each vehicle on the Declarations Page.  Again, an average purchaser would not believe they were purchasing stacked coverage based on the figures identified in the Declarations Page when read together with Paragraphs 1 through 3.  Despite the arguments advancing ambiguity in the meaning of the phrase "these maximums," the Court may not create ambiguity.  *Kitsap Cnty.*, 964 P.2d at 1178.

The Weilerts' reliance on *Yates v. Farmers Auto. Ins. Ass'n*, 724 N.E.2d 1042 (Ill. App. Ct. 2000) is misplaced.  In *Yates*, the Illinois court concluded the UIM policy at issue was ambiguous because,

> . . . [i]n one part of the insurance policy, there is a provision claimed to be an antistacking provision.  On the declaration page, the policy states that coverage is provided where a premium and a limit of liability are shown.  On the declarations page, the policy shows limits of '50/100' and a premium under each of the two vehicles.

724 N.E.2d at 1045.

Although the Weilerts argue the reasons for finding ambiguity in *Yates* exist in the Policy at issue in this case, it is unclear whether the State of Illinois at the time of *Yates* had a similar statute as Washington which allows an insurer to limit UIM stacking—and if one did exist at the time, *Yates* failed to analyze the effect of that statute on its analysis.  In contrast, because Washington does allow an insurer to include a limitation on stacking, the fact that a declarations page identifies a premium correlating to a specific auto is negligible.  *See Lien v. Allstate Ins. Co.*, 626 F. Supp. 1132, 1135 (W.D. Wash. 1986) ("Thus, this Court concludes that the references to premiums paid [on a declarations page] . . . is not significant[.]").[3]

---

[3] In *Lien*, the policy holders argued "that the policy limitation [was] defective because it [did] not refer to limitations regardless of 'premiums shown on the policy, or premiums paid." *Id*. at 1134. This argument was rejected because this Court concluded § 48.22.030, which at that time was recently amended, had overruled the prior decisions on which the policy holders based their argument. *Id*. at 1135.

(DKT. NOS. 6, 9) - 8

The Weilerts also note the language of the insurance policies in each of the cases GEICO relies on as support for its interpretation is significantly different, and that if GEICO wanted to limit stacking, GEICO could have and should have used language such as that found in those cases. (Dkt. 13 at 4–6.) The Court acknowledges the language in this case is different than the policies at issue in the caselaw cited. Nonetheless, as identified above, the Court concludes that the Policy, when read as a whole, limits stacking and provides maximum coverage of $100,000/$300,000/$50,000 per accident.[4]

### III.   CONCLUSION

Accordingly, having reviewed the two motions for summary judgment (Dkt. Nos. 6, 9) and the remainder of the record, the Court hereby:

1. GRANTS Plaintiff GEICO's motion for summary judgment (Dkt. No. 6); and
2. DENIES Defendant David and Amber Weilert's motion for summary judgment (Dkt. No. 9).

Dated this 26th day of September 2023.

David G. Estudillo
United States District Judge

---

[4] The Parties also offer argument as to the effect of the "OTHER INSURANCE" language contained in the Policy and Paragraph 6 of the Limits of Liability. (*See* Dkt. Nos. 6 at 11–15; 9 at 7–8.) However, those provisions, by their terms, apply to "other applicable similar insurance" and "separate policies." The UIM coverage at issue in this case is contained within the same, single Policy. Therefore, language dealing with other similar insurance or separate policies is irrelevant to the issues presented in this case.